THE LYNN.

(*District Court, S. D. Georgia.* January, 1884.)

COLLISION—FAULT.

> Where a collision is brought about by a lack of watchfulness and care on the part of those on board a steam-vessel colliding with a schooner nearly at rest, although a whistle from a tug having the schooner in tow might have called their attention to their duty, the steam-vessel is, nevertheless, liable.

In Admiralty.

*S. A. Darnell*, U. S. Atty., for libelant.

*Lester & Ravenel*, for claimants.

LOCKE, J. This is a libel in admiralty in behalf of the United States, owners of the dredge-boat Henry Burton, for damage alleged to have been done her in collision with the schooner Pierson while in tow of the steam-tug Lynn. On the ninth of March, 1880, the Henry Burton was at work in the river opposite the wharves at Savannah, when the steam-tug Lynn, with the schooner Pierson in tow, passed down the stream. After they had passed on some 1,200 feet, the Burton, having completed her load of sand, followed in their wake. The Lynn was intending to dock her tow at a wharf on the right bank, down some half-mile, so kept along that side of the river, and, having got down as far as necessary, put her helm to starboard, stopped, and, as the schooner came by, slued her around across the river channel and over to the left bank. The Burton, coming down astern, put her helm to starboard, when she saw the Lynn had turned around, and attempted to pass to the port of the Pierson, or rather across her bows, as she was swinging; but, finding she was getting into shoal water on the north bank of the river and could not go clear of the schooner, stopped just in time for her jib-boom to sweep across the after-part of the steamer and carry away guys, booms, and rigging, and rip up some of the deck and bulwark plank, doing about $100 damage.

It is claimed by the libelants that the Burton was pursuing her legitimate business in dredging the channel, and was therefore entitled to particular consideration; and also that the stopping and turning of the tug and tow were without any notice by whistle or otherwise. Had she been following immediately behind them, this view of the case would be reasonable; but the evidence shows that there was not far from 1,200 feet between the vessels when the Lynn stopped and swung around to the port. There was no obstacle to obstruct the view, but the vessels were in plain sight, and the maneuver could have been neither mistaken nor misunderstood, if seen. The steamers, after the Lynn had turned, were heading towards each other, and each bound to keep to the starboard, or give reasonable notice of a different intention. Constant vigilance is especially required and demanded of all who undertake to navigate the waters of

harbors; and in this case the fact that the tug was not seen when she first stopped and commenced the maneuver of turning, was the cause of the collision. Had her movements been observed, there would have been ample time to have stopped, reversed, and so far checked the headway of the Burton as to have prevented the catastrophe; or to have put her helm to the port, and taken the starboard or southern side of the channel, where there was room enough for her to pass.

The channel here is shown to be about 300 feet wide, the schooner was about 120 feet keel, and her bow was so far over on the north bank as she came round that the Burton, as is claimed, could not keep far enough off, on account of the shoal water, to pass her. There must have been, then, some 150 feet astern of her on the south bank. But, had there been any difficulty in that, the 1,200 feet should have been space enough in which to have checked her headway entirely until the schooner had swung around, and left either side clear. The tug, after turning, and at the time of the collision, was in the stream, about the middle of the channel, heading up stream, but not sufficiently under way to give the schooner any headway more than that she had by swinging; and it was actually the Burton that brought about the collision by her motion. It may be that the attention of those on the Burton would have been particularly attracted had the Lynn blown several short whistles, but it would only have called their attention to their duty, as it certainly was for them to be on the lookout as to what was going on directly in their course. Not only does the testimony of the witnesses satisfy me that the Burton was sufficiently far astern of the tug and tow, when they commenced to turn, to have either stopped or gone to the starboard, but this is more fully established by the fact that the tug had stopped, checked the headway of the schooner, turned about, and headed up stream; the schooner had stopped her headway, swung around, and shot ahead nearly or quite across the channel before the collision occurred. Had the Burton been following in the immediate vicinity of the other vessels she would, without doubt, have passed safely on the port side; but, in attempting this so late as he did, the master took the chances of success or disaster, which proved to be against him.

The libel is dismissed, but without costs.